UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SPITERI,

        Plaintiff,                                  Case No. 13-cv-11806

                                                        Paul D. Borman
v.                                                      United States District Judge

                                                        Michael J. Hluchaniuk
AT&T HOLDINGS, INC. and                United States Magistrate Judge
MICHIGAN BELL TELEPHONE
COMPANY,

        Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (ECF NO. 13)

      Before the Court is Defendants AT&T Holdings, Inc. and Michigan Bell Telephone Company's Motion for Summary Judgment. (ECF No. 13.) Plaintiff filed a Response (ECF No. 18) and Defendants filed a Reply (ECF No. 25). The Court held a hearing on June 18, 2014. For the reasons that follow, the Court GRANTS Defendants' motion.

**INTRODUCTION**

      Plaintiff claims that his employer, Defendant Michigan Bell Telephone Company[1] ("Michigan Bell"), terminated him because he engaged in protected activity under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201, *et seq.* Plaintiff claims that he engaged in protected activity when he refused to work additional hours at the end of his scheduled shift to make

---

[1] Plaintiff does not oppose Defendant AT&T Teleholdings, Inc.'s (AT&T) Motion for Summary Judgment. (ECF No. 18, Pl.'s Resp. 1 n.1.) Accordingly, the Court GRANTS AT&T's Motion and DISMISSES AT&T from this action WITH PREJUDICE.

1

up for time he was permitted to be off task during the work day to stand and/or walk as an accommodation for his disabling back pain. Plaintiff also claims that Michigan Bell violated the Michigan Persons With Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101, *et seq.*, by failing to provide a reasonable accommodation for his disability. In response to Plaintiff's FLSA claim, Michigan Bell argues that Plaintiff has (1) failed to demonstrate that he complained to Michigan Bell about a violation of the FLSA, (2) failed to show that the underlying conduct about which he complains, i.e. having to make up his accommodation break time, violated the Act and (3) failed to demonstrate the his termination was causally related to his alleged protected activity. With regard to Plaintiff's claims under the PWDCRA, Michigan Bell argues that Plaintiff was offered and refused a reasonable accommodation.

**I.      BACKGROUND**

Plaintiff generally accepts Michigan Bell's submission of undisputed facts. (Pl.'s Resp. 3.) Plaintiff was hired by Michigan Bell on April 22, 2001 as an installation technician. (Def.'s Mot. Ex. 32, December 11, 2013 Deposition of David Spiteri 17.) On December 10, 2009, Plaintiff's installation position was declared unnecessary due to a surplus of technicians and Plaintiff was offered, and accepted, a position as a dispatcher in Michigan Bell's Southfield, Michigan call center, working an 8:00 a.m. to 4:30 p.m. shift five days a week. *Id.* at 18-19, 20-21, 28. The dispatcher job is sedentary and involves fielding calls from and making calls to customers to set up service appointments. *Id.* at 21. Plaintiff held the dispatcher position until December 20, 2011, when Plaintiff was terminated for job abandonment. *Id.* at 126.

Michigan Bell has a policy to address employee requests for accommodations due to medical conditions. (Def.'s Mot. Ex. 31, February 19, 2014 Declaration of Gale Piner ¶ 7, Ex. A.) Pursuant

to that Policy, an employee seeking a medical accommodation must direct the request to the AT&T Integrated Disability Service Center ("IDSC"), which assigns an accommodation specialist to the employee's case. Plaintiff was aware of this Policy, through which the employee is required to provide medical documentation supporting the request which is then reviewed by the IDSC specialist who determines whether the proposed restrictions are medically substantiated and determines whether accommodations can be made, and continues to monitor the case until the need for accommodation ceases to exist. *Id*.

On April 25, 2011, Plaintiff requested time off due to "extreme lower back pain," and stated in an email to the scheduling department that he would be applying for leave under the Family Medical Leave Act ("FMLA"). (Pl.'s Dep. 48; Def.'s Mot. Ex. 4.) Plaintiff did take FMLA leave until May 16, 2011, when he returned to work and immediately emailed the scheduling department to say he was leaving early again due to back pain, recommencing his FMLA leave. (Pl.'s Dep. 48-49; Def.'s Mot. Ex. 31, Piner Decl. ¶ 8, Ex. B.)

On May 20, 2011, Dr. Sidhu wrote a note in support of Plaintiff's medical need for time off work, indicating that Plaintiff could return to work on June 13, 2011, without restrictions. (Def.'s Mot. Ex. 6; Pl.'s Dep. 58-59.) In a subsequent note dated June 3, 2011, another physician in Dr. Sidhu's group wrote a note stating that Plaintiff was released to return to work on June 13, 2011, with the restriction of "no prolonged sitting for 6 weeks." (Def.'s Mot. Ex. 5; Pl.'s Dep. 50-52.)

On June 13, 2011, when Plaintiff returned to work he met with Attendance Manager Gale (Edwards) Piner who explained the accommodations that Michigan Bell was willing to make. Under the terms of the Collective Bargaining Agreement ("CBA") governing Plaintiff's employment, Plaintiff was entitled to two 15-minute paid rest breaks and an unpaid meal break. Plaintiff was

offered the opportunity to take additional break time in addition to the two 15-minute compensated breaks and his meal break so that he could walk or stand intermittently throughout the day. Plaintiff also would be given a sit/stand desk option at his workstation.

Plaintiff concedes that Michigan Bell provided him with the extra break time and that the ability to take those extra breaks adequately accommodated his back pain. (Pl.'s Dep. 83, 121.) However, Michigan Bell conditioned the extra break accommodation on Plaintiff working an additional number of hours every day equal to the time spent on his periodic breaks that were in addition to the two company-paid 15-minute breaks. Plaintiff felt that requiring him to "make up" this extra break time was "unfair."

Plaintiff also concedes that Michigan Bell provided him with a sit/stand work station that was designed to permit him to sit or stand while working, but Plaintiff claims that the sit/stand desk never functioned properly and required him to hunch over to use his keyboard. He reported this lack of functionality to Piner shortly after receiving the desk. (Pl.'s Dep. 61-63, 65-66, 73.) Plaintiff concedes that had the sit/stand desk functioned properly, it would have adequately accommodated his need to stand, stretch and avoid prolonged periods of sitting, as his doctors recommended: "[P]roviding Spiteri with a *working* stand/sit station *would have* served as a reasonable accommodation." (Pl.'s Resp. 11.) (Emphasis in Original.)

At the June 13, 2011 meeting with Plaintiff, Piner explained to Plaintiff the terms of the proposed accommodations and documented Plaintiff's response:

> I informed David that I have received his accommodations of frequent breaks, and a sit/stand work station. I explained to David that the department was able to accommodate this request as follows:
>
> I informed David that however much time that he takes during the day, that time will need to be made up at the end of his shift, daily. David stated that he could not do

> that, because he would be here until Midnight. I stated to David that this is the way that we accommodate for frequent breaks. David stated that he talked to the Union, and they stated that he did not have to make up the time. I stated to David that for frequent breaks, the time will need to be made up. David stated that was unfair, and he also stated that he could not use the sit/stand workstation. I stated to David that I had to find a sit/stand for him, and that was the only one that was available. David said he would get back to me, regarding his accommodations. I stated that would be fine. I asked David if he had additional questions, and he stated that he did not.

(Def.'s Mot. Ex. 7; Pl.'s Dep. 59-60.)

On June 16, 2011, Plaintiff again went on FMLA leave due to his back condition and returned on July 21, 2011. During his second FMLA leave, Plaintiff saw an orthopaedic specialist, Dr. Yaish, D.O., who wrote on July 1, 2011, that Plaintiff had "L4-5 disk protrusion with some degenerative changes," and should avoid sitting for prolonged periods of time and needed to continue changing postures in order to relieve his pain. (Pl.'s Resp. Ex. 4.) When Plaintiff returned to work on July 21, 2011, he complained to one of his floor managers that his sit/stand workstation was not working and informed the scheduling department in an email that his sit/stand workstation was not working and would not raise up to accommodate his height. (Def.'s Mot. Ex. 8; Pl.'s Dep. 68-69.) The problem with the workstation was never addressed and Plaintiff left work on July 26, 2011, due to back pain and commenced a medical leave of absence (having exhausted all of his FMLA leave for the year) beginning on July 27, 2011 that was approved through August 10, 2011 with full pay. (Def.'s Mot. Ex. 4; Piner Decl. ¶ 10 Ex. D; Pl.'s Dep. 49.)

Plaintiff returned to work on August 11, 2011, having provided the IDSC with a second note from Dr. Yaish dated August 1, 2011 stating that he could return to work but should be "allow[ed] [] to stand 15 minutes as needed." (Def.'s Mot. Ex. 11; Pl.'s Dep. 87.) Consistent with the restrictions noted by Dr. Yaish, Plaintiff was permitted to take breaks, as needed, to stand and walk or stretch. Plaintiff acknowledged that these walk breaks fully accommodated his back pain and

were effective in allowing him to perform his job. (Pl.'s Dep. 83.) Plaintiff continued, however, to refuse to make up this extra accommodation break time at the end of his shifts. (Pl.'s Dep. 101.)

Because of Plaintiff's refusal to make up his accommodation break time, Piner met with Plaintiff, with Tina Culver the Union Benefits Representative on the phone, and documented the following conversation:

> I informed David that I needed to have a conversation with him, regarding his accommodation. I informed David that Tina Culver, the Union Benefits Representative will be joining us via the telephone.
>
> I then informed David that the company had reviewed his request about not being paid for his accommodation, and we had decided that the most reasonable way to accommodate his request is for him to make up his time, at the end of his tour. David stated that he thought this was unfair, because he may have to work until midnight. I explained to David this is how we have accommodated requests in the past, and we consider him making up his time as reasonable. He then asked Tina was she listening, and she stated that she was. Tina also stated that this is how the company handles this type of request.
>
> I then stated to David that I needed him to start to make-up his time today. I stated to David that I know he had at least 1 hour, but maybe more and I would let him know the exact amount. David stated that he had obligations after work, so he would not be making up the time. He also stated that he would be contacting Greg Streeby, Union President, because he did not think this was right.

Def.'s Mot. Ex. 13; Pl.'s Dep. 95-97.

Plaintiff continued to refuse to make up his accommodation break time and, on September 2, 2011, Area Managers Terry Hewer and John Goga met with Plaintiff to reiterate the expectations:

> Terry Hewer stated "the expectation is for you to make any accommodation time taken at the end of your tour that same business day. Terry then asked: "Do you understand that?" David said yes. . . . Terry also said "The first time you do not make up your accommodation time, the instance will be considered insubordination." Terry reiterated, "I want to make sure you understand, the first time you do not make up your time, it will be considered insubordination." Terry explained, David's approved accommodation is to sit for 45 minutes, then walk around for 15 minutes. David said, "his accommodation is to sit for 15 minutes, then walk around for 5 minutes."

6

Def.'s Mot. Ex. 14; Pl.'s Dep. 106-08.

Plaintiff continued to refuse to make up his accommodation break time and, on September 7, 2011, he was suspended for insubordination. On September 7, 2011, Piner met with Plaintiff, along with a union representative, and asked Plaintiff if he remembered the expectations regarding his accommodation that Hewer and Goga had expressed to him on September 2, 2011. Def.'s Mot. Ex. 15; Pl.'s Dep. 106-08. Plaintiff indicated that he understood that any break he took during the day to accommodate his back pain needed to be made up at the end of his tour and that he understood that he had used 2 hours and 13 minutes of extra break time on September 6, 2011 that he failed to make up. *Id*. He acknowledged that was correct. He was then informed that he was being suspended for the remainder of the day for failing to follow the directive he was given which amounted to insubordination. *Id*. Piner explained to Plaintiff that if he continued to ignore this directive, he would be subject to further discipline, including dismissal. *Id.*

Plaintiff returned to work on September 9, 2011 and met with Piner who reiterated the expectation that he make up his extra accommodation break time and further informed Plaintiff that a meeting was scheduled for September 12, 2011, with benefits consultants to discuss Plaintiff's accommodation. Def.'s Mot. Ex. 16; Pl.'s Dep. 108-09. Later that day, on September 9, 2011, Plaintiff called off work due to back pain and did not return to work until the middle of November. Def.'s Mot. Ex. 17; Pl.'s Dep. 109-110. Plaintiff again applied to the IDSC for short-term disability benefits but his claim was denied because he failed to support his request with medical documentation. Def.'s Mot. Ex. 18; Pl.'s Dep. 111-12. After receiving some follow up medical documentation from Plaintiff, on October 26, 2011, the IDSC mailed Plaintiff a letter denying his claim. Def.'s Mot. Exs. 20, 21; Pl.'s Dep. 113-15. By letter from the IDSC dated November 1,

2011, Plaintiff was instructed to return to work by November 8, 2011 or face termination for involuntary resignation. Def.'s Mot. Ex. 21; Pl.'s Dep. 115-16.

Plaintiff returned to work on November 14, 2011, without explanation as to his failure to report as directed on November 8, 2011, and left later that day due to "a lot of pain in back and legs, going numb . . . ." Def.'s Mot. Ex. 23; Pl.'s Dep. 122. Plaintiff then made another claim for disability which was denied by the IDSC on December 13, 2011, with instructions to Plaintiff that he return to work on December 19, 2011 or face termination for failure to return to work. Def.'s Mot. Ex. 25; Pl.'s Dep. 125. Plaintiff did not return to work on December 19, 2011 for reasons that he cannot remember. Pl.'s Dep. 125-26. On December 20, 2011, Attendance Manager Willie Dillard mailed Plaintiff a letter stating that his employment was terminated for job abandonment. Def.'s Mot. Ex. 26; Pl.'s Dep. 126.

## III.  ANALYSIS

### A.  Plaintiff's Fair Labor Standards Act Claim

Plaintiff has commenced this action under the retaliation provision of the FLSA. Under the FLSA, it is unlawful for any person to terminate or in any other manner discriminate against an employee because that employee has filed a complaint or instituted or caused to be instituted any FLSA proceeding or has testified or is about to testify in any such proceeding. 29 U.S.C. § 215(a)(3). Absent direct evidence of discrimination,[2] the Sixth Circuit has held, FLSA retaliation claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, to establish a *prima facie* case of retaliation,

---

[2] Because Plaintiff has failed to establish that Michigan Bell's requirement that Plaintiff make up his accommodation break time violated FLSA, Plaintiff's suggestion that there is direct evidence of discrimination fails.

the employee must prove that (1) he engaged in a protected activity under the FLSA; (2) his exercise of the protected right was known by the employer; (3) thereafter, the employer took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). If the employee establishes a *prima facie* case, the burden then shifts to the employer to set forth a legitimate, non-retaliatory reason for the adverse employment action. *Id*. If the employer meets that burden, the employee must establish that the employer's proffered reason was not the true reason but merely a pretext for retaliation. *Id*.

Michigan Bell first argues that Plaintiff cannot establish that he engaged in protected activity under the Act because he did not "complain" to his employer about the lack of pay for the extra hours he was being required to work to make up for his multiple daily stand/walk breaks. "The FLSA makes it unlawful for an employer to fire an employee who, among other things, engages in any of the following protected acts: (1) filing a complaint against employer; (2) instituting a procedure against an employer under the FLSA; and (3) testifying in any proceeding brought under the FLSA. 29 U.S.C. § 215(a)(3). . . . [T]o satisfy the 'complaint' requirement, the plaintiff need not file a formal complaint with the Equal Employment Opportunity Commission; the lodging of a complaint with the employer is sufficient." *McDaniel v. Transcender, LLC*, 119 F. App'x 774, 779 (6th Cir. 2005) (citing *EEOC v. Romeo Community Schools*, 976 F.2d 985, 989 (6th Cir. 1992)). In *Kasten v. Saint–Goban Performance Plastics Corp.*, 131 S.Ct. 1325, 1334-35 (2011), the Supreme Court clarified that a complaint under the Act can be oral and is considered sufficient to put an employer on notice of the employee's assertion of rights under the statute when it is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content

and context, as an assertion of rights protected by the statute and a call for their protection." *Id*.

While Plaintiff's evidence on this point is thin, it is sufficient, viewing the facts in the light most favorable to him, to establish this element of the *prima facie* case. While on his second FMLA leave, on June 22, 2011, Plaintiff filed his Complaint with the EEOC charging that his employer was requiring that for each time he was away from his workstation accommodating his back pain, he had to make up that time "or have [his] wages garnished." (Pl.'s Mot. Ex. 3, EEOC Charge of Discrimination.) While Plaintiff's EEOC charge mentions Title VII and does not mention the FLSA, it is well established that the statute itself need not be mentioned to put an employer on notice that its protections are being sought. While it is true that Plaintiff complained to his employer in general terms that it was "unfair" that he had to make up the time he spent on his stand/walk breaks, Gale Edwards' August 30, 2011 notes summarizing her conversation with Plaintiff indicated that she informed Plaintiff that "the company had reviewed his request about not being paid for his accommodation, and [] had decided that the most reasonable way to accommodate his request is for him to make up his time, at the end of his tour." (Pl.'s Mot. Ex. 6.) Based on this evidence, a reasonable juror could conclude that Michigan Bell had notice that Plaintiff was complaining that he was being required to work hours for which he was entitled to compensation and was being denied that compensation, thus invoking the protections of the Act. These facts, viewed in the light most favorable to the Plaintiff, create a genuine issue of fact as to whether Michigan Bell knew that Plaintiff was attempting to assert rights under the Act.

A further requirement, however, necessary to establish the first element of Plaintiff's *prima facie* case, i.e. that Plaintiff engaged in protected activity, is sufficient proof that Plaintiff had a subjective belief that Michigan Bell was violating FLSA and that such a belief was objectively

10

reasonable. "Even if an employer has the requisite notice, a complaint will only trigger FLSA protection if the employee lodges his complaint i) in good faith and ii) with an objectively reasonable belief that the employer's conduct is unlawful." *Barquin v. Monty's Sunset, L.L.C.*, 975 F. Supp. 2d 1309, 1314 (S.D. Fla. 2013) (finding that it was not objectively reasonable for employees who did not work overtime to complain of payment for overtime work) (citing *Little v. United Techs. Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (decided under Title VII anti-retaliation provision); *Perez v. Brands Mart Service Corp.*, No. 10-61203, 2011 WL 3236022, at *10-11 (S.D.Fla. July 28, 2011) (decided under FLSA anti-retaliation provision)). *See also Burnette v. Northside Hosp.*, 342 F. Supp 2d 1128, 1133 (N.D.Ga. 2004) ("As under Title VII and other employment discrimination statutes, the complaining employee must have an objectively reasonable, good-faith belief that the employer's conduct [violates FLSA]")); *Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 960 (S.D. Ind. 2013) (finding that the failure to pay minimum wage for non-productive time did not constitute a FLSA violation and holding that complaining about "payment for non-productive time" is not protected activity). "[I]t is presumed that the employee has substantive knowledge of the law when applying the objective test. If plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.". *Perez,* 2011 WL 3236022, at *10 (internal quotation marks and citations omitted) (alteration in original). "If the employee's belief is not both objectively reasonable and in good faith, his complaint does not constitute protected activity." *Burnette*, 342 F. Supp. 2d at 1134.

As discussed *infra*, Plaintiff has provided the Court with no authority demonstrating that requiring Plaintiff to make up his accommodation break time violated the FLSA. Plaintiff has cited

no law to support his contention that he should be paid for time spent entirely off task as a result of his requested accommodation. The Court concludes that it was not objectively reasonable for Plaintiff to believe that he should be paid for the time that he spent completely off task, walking around and stretching, while other employees remained on task at their respective workstations, taking only the two paid 15-minute paid breaks that Michigan Bell allowed in addition to their unpaid lunch break. As *Barquin*, *Burnette*, *Panwar* establish, beyond authorized paid breaks that are afforded every employee, "payment for non-productive time is not a right that is protected by the FLSA." It is not objectively reasonable to believe that one should be paid for eight hours of work while spending a third to a quarter of that time on personal breaks. Also, as discussed *infra*, in analogous situations, employees with special needs for additional break time in their work day have been accommodated by being permitted to take such breaks and make that time up before and/or after work. *See infra* discussion at section IIB.

Because Plaintiff's belief that Michigan Bell was engaged in unlawful conduct was not objectively reasonable, he has failed to establish the first element of his *prima facie* case, *i.e.* that he engaged in protected activity. Accordingly, Michigan Bell is entitled to summary judgment on Plaintiff's FLSA retaliation claim.[3]

---

[3] Because the Court concludes that Plaintiff has failed to create a genuine issue of material fact that he engaged in protected activity, the Court need not analyze whether Michigan Bell took an adverse employment action against him or whether there was a causal connection between any protected activity and any adverse action. The Court notes, however, that Plaintiff has not created a genuine issue of fact in this case that he was constructively discharged. "'To demonstrate constructive discharge, a plaintiff must adduce evidence to show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit.'" *Regan v. Faurecia Automotive Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2011) (quoting *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012)). To be "objectively intolerable," working conditions must be "so difficult or unpleasant that a reasonable person in [Plaintiff's] shoes would have felt compelled to

### B. Plaintiff's PWDCRA Claim That He Was Denied a Reasonable Accommodation[4]

"In order to establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) []he is disabled within the meaning of the Act; (2) []he is otherwise qualified for the position, with or without reasonable accommodation; (3) [his] employer knew or had reason to know about [his] disability; (4) []he requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City School Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). For purposes of its motion, Michigan Bell is not contesting that Plaintiff was disabled or that it knew of his disability.

---

resign." *Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987). Here, requiring Plaintiff to make up his personal break time by offering him a flexible schedule did not create an objectively intolerable working condition. In this respect, this case is distinguished from the case on which Plaintiff relies, *Ellis v. Yum! Brands, Inc.*, 556 F. Supp. 2d 677 (E.D. Ky. 2008), where the court found that an employee who was being told to continue working overtime without overtime pay (which the court determined would support a legitimate claim under the FLSA) or be fired, created an intolerable working condition because such an employee would have felt compelled to resign or give up his rights under the FLSA. Here, Plaintiff had no reasonably objective basis for believing he had a legitimate FLSA claim and thus *Yum!* is distinguished. Here, it cannot be said that the accommodation offered by Michigan Bell, offering Plaintiff a flexible work schedule to make up his personal break time, created a situation so intolerable that a reasonable person would have been compelled to quit rather than accept the accommodation.

[4] It is unclear whether Plaintiff is asserting a disability discrimination claim in addition to his claim that he was denied a reasonable accommodation. In any event, as explained *supra*, Plaintiff cannot establish a constructive discharge in this case. *See Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 487-88 (1994) ("A constructive discharge is established where an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign.") (internal quotation marks and citation omitted). Because no reasonable person could expect to be paid full time wages for part time work, a reasonable employee who is offered a flexible schedule, with the ability to come in early or work late at his discretion to make up for extra personal break time taken throughout the day, would not find his conditions of employment so intolerable as to have no option but to quit.

13

Michigan Bell argues that the as-needed break accommodation was a reasonable accommodation that did allow Plaintiff to perform his job and that Michigan Bell agreed to permit that accommodation. Plaintiff agrees that the ability to take discretionary breaks of up to 15 minutes per hour to walk and stretch did permit him to perform his job. He argues, however, that Michigan Bell's request that he make up his personal accommodation break time at the end of each shift violates the FLSA and therefore renders the accommodation unreasonable.[5]

In support of the argument that the accommodation offered did not violate the FLSA and was reasonable, Defendant relies on two factual scenarios it suggests are analogous. The Equal Employment Opportunity Commission ("EEOC") has suggested that a reasonable accommodation under the Americans With Disabilities Act ("ADA") for an employee with diabetes who needed to take additional breaks during the day to eat in order to maintain blood sugar levels, would be for the employer to allow the employee to take two additional 15 minute breaks each day and allow the employee to make this time up by arriving 15 minutes early and staying 15 minutes later. *See* http://www.eeoc.gov/laws/types/diabetes.cfm. Additionally, Defendant relies on the logic behind the recent amendment to FLSA that permits nursing mothers to take unpaid lactation breaks for one year after the birth of their child. In seeking input on the lactation break requirement, the United

---

[5] Plaintiff concedes that the other accommodation offered by Michigan Bell, i.e. a sit/stand workstation, would have been both adequate to accommodate his back pain and reasonable but asserts that Michigan Bell never provided him with a sit/stand workstation that was functional. This dispute over the functionality of the sit/stand desk is not material because Michigan Bell had the discretion to choose among equally effective accommodations and Plaintiff concedes that the extra breaks did in fact accommodate his back pain. (Spiteri Dep. 83.) *See Smith v. Honda of America Mfg., Inc.*, 101 F. App'x 20, 25 (6th Cir. 2004) ("'[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.'") (citing *Hankins v. The Gap, Inc*., 84 F.3d 797, 800 (6th Cir. 1996)) (alteration in original) (analyzing the analogous provisions of the ADA).

States Department of Labor's ("DOL") explained as follows:

> a. Unpaid Break Time
>
> Employers are not required to compensate nursing mothers for breaks taken for the purpose of expressing milk. 29 U.S.C. 207(r)(2). The FLSA does not require an employer to provide its employees with rest periods or breaks. However, if the employer permits short breaks, usually 20 minutes or less, the time must be counted as hours worked when determining if the FLSA requirements for payment of minimum wage and/or overtime have been satisfied. See 29 CFR 785.18. Where an employer already provides paid breaks, an employee who uses that break time to express milk must be paid in the same way that other employees are compensated for break time.
>
> Additional time used beyond the authorized paid break time could be uncompensated. For example, if an employer provides a 20 minute paid break and a nursing employee uses that time to express milk and takes a total of 25 minutes for this purpose, the five minutes in excess of the paid break time does not have to be compensated. The FLSA's general requirement that the employee must be completely relieved from duty applies; if a nursing employee is not completely relieved from duty during a break to express breast milk, the time must be compensated as work time. See WHD Fact Sheet #22, Hours Worked Under the FLSA at http://www.dol.gov/whd/regs/compliance/whdfs22.htm.
>
> Although the FLSA does not require employers to allow employees to extend their workday (i.e., begin work earlier or end work later) to make up for unpaid break time used for expressing milk, the Department encourages employers to provide flexible scheduling for those employees who choose to make up for any unpaid break time.

DOL, Wage and Hour Division, Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. 80073, 80075 (Dec. 21, 2010).[6] Michigan Bell offered such a flexible schedule to Plaintiff in this case, which he rejected.

Plaintiff relies on the paid break provision of 29 C.F.R. § 785.18 to support his argument that his multiple accommodation walk-about breaks, which are less than 20 minutes each in duration,

---

[6] Plaintiff suggests that neither the EEOC nor the DOL pronouncements offer relevant guidance on the issue of interpreting FLSA. As the Supreme Court's reliance on both sources in *Kasten* demonstrates, both are instructive in the Court's analysis.

15

should be treated as paid breaks under this provision. Both common sense and the EEOC and DOL commentary quoted above dictate that Plaintiff misinterprets 29 C.F.R. § 785.18 when he suggests that it permits an employee to take an unlimited number of personal rest breaks during the day and be compensated for all such breaks, as long as they are less than 20 minutes in duration. It is undisputed that Michigan Bell gives every employee, including Plaintiff, two 15-minute paid break periods each day in addition to the employee's unpaid lunch break. "Additional time used [for additional personal breaks] beyond the authorized paid breaks" generally is uncompensated time. 75 Fed. Reg at 80075. The additional breaks contemplated by § 785.18 must be analyzed to determine whether the time spent is "predominantly for the employer's or employee's benefit," and whether it is "taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time." *Mitchell v. Greinetz*, 235 F.2d 621, 624-25 (10th Cir. 1956). The short breaks contemplated by 29 C.F.R. § 785.18 "are generally beneficial to the employer in that they promote more efficiency and result in greater output. . . . The benefits to the employer are so substantial that . . . the time in question bears a close relationship to employment and is, therefore, compensable." *Id*. 625.

Plaintiff proposes that any break of less than twenty minutes taken by an employee qualifies as a compensable break under 29 C.F.R. § 785.18, regardless of the number of such breaks taken by an employee during the course of a day and regardless of the purpose. In this case, there is no dispute that Michigan Bell already provides every employee with two paid fifteen-minute breaks each day. Plaintiff seeks to treat his additional accommodation breaks, which can add up to as much as two hours a day, as similarly meriting full compensation by his employer, despite the fact that his "walk about" time takes him completely off of his employer's work and benefits only the Plaintiff.

16

In fact, Plaintiff does not even address this argument in his response and does not endeavor to demonstrate how his personal additional accommodation breaks inure to anyone's benefit but his own.

Common sense and the law demonstrate that Plaintiff's request that he be permitted to take unlimited personal breaks throughout the day, not make that time up and still be paid for an eight-hour workday is not a request for a reasonable accommodation under the PWDCRA. *See, e.g. Ginwright v. Dep't of Revenue for the State for Alabama*, No. 12-473, 2014 WL 2535185, at *7 (M.D. Ala. June 5, 2014) (plaintiff's requested accommodation that she be permitted to arrive late to work and leave at the regular time without taking leave time, to accommodate her disabling leg and back pain, was not a reasonable flexible schedule because "[p]laintiff sought [] to be paid for a full work day despite arriving late and not making up any missed time"). Nor, as discussed *supra*, has Plaintiff provided the Court with any authority to support his suggestion that his employer's refusal to grant him multiple paid discretionary breaks, without requiring him to make up the missed time, violates the FLSA.

Thus, Plaintiff has failed to create a genuine issue of material fact that the make-up break accommodation offered by Michigan Bell runs afoul of the FLSA and therefore amounts to an unreasonable accommodation. Having proposed a reasonable accommodation, Michigan Bell met its obligations under the PWDCRA; the law does not empower Plaintiff to force his employer to provide the accommodation of his choice. *See Smith v. Honda*, 101 F. App'x 20, 25 (6th Cir. 2004) ( holding that the employer providing the accommodation has the ultimate discretion to choose between effective accommodations). Plaintiff has failed to establish that requiring Michigan Bell to pay him for a full work day despite his taking multiple personal breaks without making up the

17

time off-task was a reasonable request for accommodation. Plaintiff's sole challenge to the proposed accommodation is that it violates the FLSA and is therefore unreasonable. In his deposition, when asked whether there was any other basis for his claim that Michigan Bell failed to accommodate his disability other than requiring him to make up his extra breaks, Plaintiff responded: "Not to my knowledge, no." Pl.'s Dep. 132. Further, in response to the question whether there was any other basis for his claim that the company's failure to accommodate him caused his discharge, Plaintiff stated: "Not to my knowledge, no." *Id*. at 133. At the hearing on Defendants' motion, Plaintiff's counsel reiterated several times that the proposed accommodation was unreasonable because it violated the FLSA. Plaintiff offers no support for the contention that it did violate the FLSA and his claim under the PWDCRA fails.[7]

## IV. CONCLUSION

Plaintiff could not have held a reasonably objective belief that he was entitled by the provisions of the FLSA to be paid for the time he spent on multiple, self-determined breaks throughout his day, not working for his employer but tending to his back pain. For this reason alone, he was not engaged in protected activity under FLSA and fails to establish a *prima facie* case of retaliation under the FLSA. Accordingly, his FLSA claim is dismissed.

---

[7] When asked at the hearing for authority supporting the argument that Michigan Bell's proposed accommodation violated the FLSA, Plaintiff's counsel offered one case, *Mitchell v. Greinetz*, 235 F.2d 621 (10th Cir. 1956). *Mitchell*, however, only supports the proposition that when an employer mandates rest periods to enhance employee performance and increase worker productivity, it must compensate its employees across the board for those breaks. In fact, Michigan Bell *does* provide to every employee, including Plaintiff, two fifteen-minute "*Mitchell*" breaks each work day. Plaintiff wants multiple paid "*Spiteri*" breaks in addition to the two paid breaks provided by Michigan Bell to all employees. Plaintiff's additional walk around breaks do not inure to the benefit of his employer in the manner contemplated by the *Mitchell* decision or the mandatory break provisions of 29 C.F.R. § 785.18, *i.e.* yielding increased productivity resulting in greater worker output.

Similarly, Plaintiff's claim that Michigan Bell violated the PWDCRA by offering him a flexible work schedule that required him to make-up his personal accommodation break time fails to demonstrate that Michigan Bell refused to make a reasonable accommodation and therefore fails to state a *prima facie* case under the PWDCRA. Accordingly, Plaintiff's PWDCRA claim is dismissed.

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment and DISMISSES Plaintiff's Complaint with prejudice.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: August 15, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2014.

s/Deborah Tofil
Case Manager